UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CINDY S., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No. C21-5642-MLP <br><br> ORDER |

## I.   INTRODUCTION

Plaintiff seeks review of the denial of her application for Disability Insurance Benefits. Plaintiff contends the administrative law judge ("ALJ") erred in discounting a medical opinion and her symptom testimony. (Dkt. # 15 at 1.) She also contends that she is entitled to a remand due to a constitutional violation. (*Id*.) As discussed below, the Court AFFIRMS the Commissioner's final decision and DISMISSES the case with prejudice.

## II.   BACKGROUND

Plaintiff was born in 1965, has a high school diploma, and previously worked as a secretary, health insurance scheduler and membership services representative, and temporary customer service representative. AR at 291. Plaintiff was last gainfully employed in 2015. *Id*.

ORDER - 1

In July 2018, Plaintiff applied for benefits, alleging disability as of January 15, 2014. AR at 259-65. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing. *Id.* at 188-90, 192-96. After the ALJ conducted a hearing in September 2020 (*id*. at 117-53), the ALJ issued a decision finding Plaintiff not disabled. *Id.* at 56-67.

As the Appeals Council denied Plaintiff's request for review, the ALJ's decision is the Commissioner's final decision. AR at 1-7. Plaintiff appealed the final decision of the Commissioner to this Court. (Dkt. # 4.)

### III.   LEGAL STANDARDS

Under 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). As a general principle, an ALJ's error may be deemed harmless where it is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted). The Court looks to "the record as a whole to determine whether the error alters the outcome of the case." *Id*.

"Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v.*

ORDER - 2

*Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld. *Id.*

### IV.   DISCUSSION

#### A.   The ALJ Did Not Err in Discounting Plaintiff's Testimony

The ALJ summarized Plaintiff's testimony and explained that he discounted it because: (1) Plaintiff made inconsistent statements about her symptoms and activities, (2) the objective medical evidence does not corroborate Plaintiff's allegations, (3) Plaintiff used a cane without medical documentation establishing its necessity, and (4) Plaintiff's use of a cane during a consultative examination constitutes "malingering or impression management." AR at 60, 62-65. Plaintiff argues that the ALJ failed to provide clear and convincing reasons to discount her testimony, as is required in the Ninth Circuit absent affirmative evidence of malingering. *See Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th Cir. 2014).

The parties first dispute whether the ALJ properly found evidence of malingering. The Commissioner argues that because the ALJ found evidence of malingering, he was not obligated to provide clear and convincing reasons to discount Plaintiff's allegations. (Dkt. # 19 at 18.) Plaintiff notes, correctly, that no doctor diagnosed malingering (dkt. # 15 at 16), but "affirmative evidence of malingering" need not be based on a medical diagnosis. *See, e.g.*, *Berry v. Astrue*, 622 F.3d 1228, 1235 (9th Cir. 2010) (citing Plaintiff's statements regarding volunteer work and his ability to work as evidence of malingering).

The Court need not determine whether the evidence cited by the ALJ constitutes malingering, because even if the evidence cited by the ALJ in this case does not constitute affirmative evidence of malingering, the ALJ provided other legally sufficient to support the ALJ's discounting of Plaintiff's testimony. The ALJ referenced various discrepancies in

Plaintiff's statements (AR at 64-65) and, although Plaintiff submitted a declaration to the Appeals Council in an attempt to clarify those inconsistent statements (*id*. at 381-82), Plaintiff has not shown that the ALJ erred in discounting her testimony based on those discrepancies. *See* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *8 (Oct. 25, 2017) (indicating that ALJs may "consider the consistency of the [claimant's] own statements" in evaluating the claimant's testimony). Plaintiff has not shown that her declaration must be credited nor that it eliminates all inconsistencies in her reporting, and thus it does not undermine the ALJ's finding that the record contains inconsistent statements regarding Plaintiff's symptoms.

The ALJ also discounted Plaintiff's testimony that she required the use of an assistive device because this allegation was unsupported by objective medical evidence, which the Ninth Circuit has held is a legally sufficient reason to discount a claimant's testimony. *See, e.g.*, *Thomas*, 278 F.3d at 959 (finding that an ALJ did not err in failing to account for a claimant's alleged need for a cane or wheelchair where no such device had been prescribed for her, and the allegation was therefore unsupported by objective medical evidence); *Verduzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999) (affirming an ALJ's discounting of claimant's allegations because he used a cane at the hearing "although none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk"); *Castenada v. Astrue*, 344 F. App'x 396, 398 (9th Cir. Sep. 2, 1999) (affirming an ALJ's discounting of claimant's allegation that he used a cane and a back brace where he did not use either at the hearing and "no doctor had prescribed the use of a cane"). The ALJ noted that Plaintiff told her provider she used a cane her husband bought at Walmart (AR at 1260), but that no provider had prescribed it, and this undisputed fact reasonably undermines Plaintiff's allegation that her cane was medically necessary. The ALJ also went on to cite records where Plaintiff disclaimed the need for a cane

ORDER - 4

and/or was observed to have normal gait without the use of a cane, which further supports the ALJ's finding of an inconsistency in the record regarding Plaintiff's need for a cane. *See id*. at 64 (citing *id*. at 1072, 1151, 1264). Plaintiff has not alleged or shown error in this line of the ALJ's reasoning.

Plaintiff points to evidence that her providers prescribed pain medication, which Plaintiff argues "show[s] that [her] physicians accepted her pain claims." (Dkt. # 15 at 17.) But the ALJ did not find that Plaintiff had no pain or that her providers did not believe her allegations of pain, and this argument therefore does not show error in the ALJ's assessment of Plaintiff's testimony. The ALJ summarized Plaintiff's complaints of pain and found that the evidence showed that Plaintiff's pain was not disabling, as she had alleged, in light of her improvement with treatment, activities, and normal functional findings. AR at 62-65. Plaintiff has not shown that this line of reasoning is erroneous.

Lastly, Plaintiff argues that the ALJ erred in failing to discuss her medication side effects, namely fatigue and dizziness. (Dkt. # 15 at 18.) The ALJ's decision does reference Plaintiff's fatigue symptoms (AR at 63-64), however, and Plaintiff has not pointed to evidence that her dizziness symptoms resulted in limitations not accounted for in the ALJ's RFC assessment, nor has she pointed to any objective evidence supporting the existence of this alleged side effect. Without that objective support, Plaintiff has not shown that the ALJ erred in failing to account for dizziness. *See, e.g.*, *Thomas*, 278 F.3d at 960 (affirming an ALJ's exclusion of plaintiff's alleged side effects of dizziness and concentration difficulties because plaintiff "offers no objective evidence that her medications affected her concentration or caused dizziness").

For all of these reasons, Plaintiff has not shown that the ALJ's reasons to discount her testimony are erroneous, and the Court therefore affirms this portion of the ALJ's decision.

**B.      The ALJ Did Not Err in Discounting the Opinion of Jeremy Senske, Psy.D.**

Plaintiff contends the ALJ erred in assessing Dr. Senske's opinion. Because Plaintiff filed her claim after March 27, 2017, new regulations apply to the ALJ's evaluation of medical opinion evidence. The new regulations still require ALJs to explain their reasoning with specific reference to how they considered the supportability and consistency factors, 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b), and that reasoning must remain legitimate. *See Thomas S. v. Comm'r of Social Sec.*, No. C20-5083 RAJ, 2020 WL 5494904, at *2 (W.D. Wash. Sept. 11, 2020). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020).

Dr. Senske performed a psychological examination of Plaintiff in December 2018 and wrote a narrative report describing her symptoms and limitations. AR at 901-04. Dr. Senske noted that Plaintiff used a cane and his medical source statement references some physical concerns:

> Claimant's ability to reason and understand and use memory to solve problems appears to be intact. Her sustained concentration and persistence are poor with difficulty adapting to general situations. She does have intact social functioning. Her main limits appear to be due to physical functional limitations and chronic pain, which are deferred to the assessment of a medical doctor. She does have some slight anxiety, which impacts her situation as well.

*Id*. at 903.

The ALJ summarized Dr. Senske's opinion report and found it partly persuasive when comparing Plaintiff's presentation and reports to a different examiner the following week. AR at 59-60. Specifically, the ALJ noted that Plaintiff did not present with a cane and did not report needing a cane during a physical examination a week later, and did not report attending any social events to Dr. Senske but told other providers about previous and upcoming holiday travel. *Id*. at 60 (referencing *id.* at 657, 873-76, 888). In light of these inconsistencies, and Dr. Senske's

mostly normal mental status examination findings, the ALJ found that Dr. Senske's opinions as to Plaintiff's concentration, persistence, pace, and adaptability deficits were not persuasive because they were based on Plaintiff's non-credible self-reporting. *Id*. at 60. The ALJ also found that Dr. Senske had limited support for his opinion because he did not have access to the longitudinal record, which was inconsistent with Plaintiff's self-report to Dr. Senske and included contrary medical opinions. *Id*.

Plaintiff argues that the ALJ erred in discounting Dr. Senske's opinion, but her arguments do not pertain to all of the ALJ's reasons. For example, Plaintiff first contends that Dr. Senske was qualified to opine as to pain behaviors and the connection between pain and mental impairments (dkt. # 15 at 12), but Dr. Senske did not provide any opinion as to pain behaviors or the impact of Plaintiff's pain on her mental functioning. Instead, Dr. Senske deferred an assessment of Plaintiff's pain to medical providers. *See* AR at 903.

Plaintiff goes on to contend that subsequent records corroborate Dr. Senske's conclusions, citing evidence of depression and anxiety symptoms and various physical findings (dkt. # 15 at 13-14), but it is not clear how these findings pertain to the deficits Dr. Senske identified and, in any event, they do not establish that the ALJ's interpretation is unreasonable. Plaintiff argues that Dr. Senske, as an examining psychologist, had more expertise than the ALJ in evaluating Plaintiff's mental conditions and how they were impacted by pain (*id*. at 14), but again, Dr. Senske did not opine that Plaintiff's pain caused mental deficits. *See* AR at 903 (attributing Plaintiff's limited activities and decompensation to her physical pain, rather than mental limitations, and deferring assessment of Plaintiff's "physical functional issues and chronic pain" to a medical doctor).

ORDER - 7

Plaintiff's focus on Dr. Senske's ability to opine as to the intertwined nature of pain and mental limitations is thus misplaced because Dr. Senske did not provide such an opinion. Moreover, the ALJ primarily discounted Dr. Senske's opinion in light of discrepancies in Plaintiff's presentation and reports to Dr. Senske (when compared with her presentation and reports elsewhere in the record), and Plaintiff has not shown that the ALJ erred in either finding those inconsistencies or in discounting Dr. Senske's opinion on that basis. *See, e.g.*, *Calkins v. Astrue*, 384 F. App'x 613, 615 (9th Cir. June 17, 2010) ("[A]n ALJ must be permitted to discount an opinion based principally upon a claimant's self-reporting if the record contains objective evidence that the self-reporting is not credible.").

Because the ALJ's consistency and supportability findings as to Dr. Senske's opinion are reasonable and supported by substantial evidence, the Court affirms the ALJ's assessment of Dr. Senske's opinion.

### C. The Procedure for Removal of the Commissioner of Social Security is Unconstitutional but Does Not Invalidate the ALJ's Decision

Plaintiff contends this case must be remanded because the structure for removing the Commissioner of Social Security violated separation of powers under Article II of the U.S. Constitution, such that the Social Security Administration's ("SSA") decision to deny her benefits was made by individuals who had not properly been delegated authority to make such decisions.[1]

---

[1] The ALJ who decided Plaintiff's case was appointed by then-Acting Commissioner Nancy Berryhill. *See* SSR 19-1p, 2019 WL 1324866, at *2 (Mar. 15, 2019). Defendant contends Ms. Berryhill, as Acting Commissioner, was not subject to the same removal provision as Commissioner Saul. The Court need not reach this issue because, as explained below, Plaintiff cannot establish the removal provision at issue here — and the one to which Commissioner Saul *was* subject — caused her harm.

ORDER - 8

In her complaint, Plaintiff did not include any separate claim based on a constitutional violation.[2] (*See* dkt. # 4.) Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint need not provide "detailed factual allegations," but it "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Plaintiff must plead enough facts "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). Consequently, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Twombly,* 550 U.S. at 555 n.3.

In the absence of any supporting facts pleaded in the complaint, referencing a potential constitutional violation in the complaint and then fleshing out the claim in briefing is insufficient to present the claim to the Court. *Cf. Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008) (Ninth Circuit "precedents make clear that where, as here, the complaint does not include the necessary factual allegations to state a claim, raising such claim in a summary judgment motion is insufficient to present the claim to the district court."); *see also Pac. Coast Fed'n of Fishermen's Associations v. Glaser*, 945 F.3d 1076, 1086-87 (9th Cir. 2019). Briefing on Plaintiff's agency appeal, like briefing on a summary judgment motion, "is not a procedural

---

[2] The Court recognizes this case was filed utilizing the Court's "Pilot Program for Electronic Service in Social Security Cases," which applies only to actions against the Commissioner in which "the only claim that is being brought is pursuant to 42 U.S.C. § 405(g)." Amended General Order 04-15 at 2. An action alleging any claim other than a § 405(g) claim must be filed through a different avenue. *Id.* ("In particular, the Pilot Program does not apply to (a) complaints that include claims against the Commissioner in addition to, or other than, those brought pursuant to 42 U.S.C. § 405(g)[.]"). Whether filed under a § 405(g) claim or on its own, Plaintiff was not foreclosed from asserting a constitutional claim in the complaint.

ORDER - 9

second chance to flesh out inadequate pleadings." *Wasco Prod., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006).

Even if Plaintiff had properly pleaded a constitutional claim, it would not impact the outcome here because the Court's review of Plaintiff's constitutional claim leads the Court to conclude that it would not require remand. For the reasons explained herein, the Court agrees with Plaintiff that the Commissioner enjoyed unconstitutional tenure protection but finds that the unconstitutional provision did not deprive the Commissioner of the authority to issue a decision on Plaintiff's claim and that Plaintiff has not alleged any compensable harm that requires reversal of the ALJ's decision denying benefits.

     1. *The Commissioner's Tenure Protection is Unconstitutional, but No Unconstitutional Protection Applies to ALJs or the Appeals Council*

Removal of the Commissioner of Social Security is governed by 41 U.S.C. § 902(a)(3). Plaintiff argues two recent Supreme Court decisions — *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183 (2020), and *Collins v. Yellen*, 141 S. Ct. 1761 (2021) — mandate a finding that the removal clause in section 902 violates the Constitution's separation of powers.[3] In *Seila Law*, the Supreme Court held the Consumer Financial Protection Bureau's ("CFPB") removal structure, which allowed for the CFPB director to be removed by the President only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers by insulating the director from removal by the President. *Seila Law*, 140 S. Ct. at 2197.

The Supreme Court addressed a removal provision again the following year in *Collins*. There, the Court held a provision limiting the President to removing the director of the Federal

---

[3] The Commissioner "agrees that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (Dkt. # 19 at 2 n.1.)

ORDER - 10

1 Housing Finance Agency ("FHFA") only for cause violated the separation of powers. *Collins*,
2 141 S. Ct. at 1783 (holding that "*Seila Law* is all but dispositive").

3 Applying the holdings in *Seila Law* and *Collins* here makes it clear that the provision for
4 removal of the Commissioner of Social Security, 41 U.S.C. § 902(a)(3), violates separation of
5 powers. The Commissioner, a single officer at the head of an administrative agency, is
6 removable only for cause. *See* 41 U.S.C. § 902(a)(3). This statutory clause suffers from the same
7 defect as the removal provisions at issue in *Seila Law* and *Collins*, and thus violates separation of
8 powers. *See Seila Law*, 140 S. Ct. at 2197; *Collins*, 141 S. Ct. at 1783; *see also* Office of Legal
9 Counsel, *Constitutionality of the Commissioner of Social Security's Tenure Protection*, 2021 WL
10 2981542, at *7 (July 8, 2021).

11 Plaintiff also contends that the ALJs and administrative appeals judges ("AAJs") on the
12 Appeals Council are subject to an additional layer of removal protection under 5 U.S.C.
13 § 7521(a) and 5 U.S.C. § 7543(a), respectively, which is unconstitutional under *Free Enterprise
14 Fund v. Public Company Accounting Oversight Board*. In that case, the Supreme Court
15 considered tenure protections applicable to members of the Public Company Accounting
16 Oversight Board, who were appointed by the Securities and Exchange Commission ("SEC") and
17 could be removed by SEC commissioners only for "good cause," and SEC commissioners in turn
18 could be removed by the President only for "inefficiency, neglect of duty, or malfeasance in
19 office." *Free Enterprise Fund*, 561 U.S. 477, 486-87 (2010) (cleaned up). The Court found that
20 these dual layers of removal protection had created "a Board that is not accountable to the
21 President, and a President who is not responsible for the Board." 561 U.S. at 495. Because the
22 Board had the power to execute and enforce laws, it had been given "executive power without
23

ORDER - 11

the Executive's oversight," and such a structure was "incompatible with the Constitution's separation of powers." 561 U.S. at 498.

This case is distinguishable from *Free Enterprise Fund* because SSA ALJs and AAJs have not been given executive power, and instead perform "adjudicative rather than enforcement or policymaking functions[.]" *Free Enterprise Fund*, 561 U.S. at 507 n.10. This distinction was acknowledged in a recent Ninth Circuit case, *Decker Coal Company v. Pehringer*, which contrasted Department of Labor ("DOL") ALJs adjudicating claims under the Black Lung Benefits Act and performing "purely adjudicative function[s]" with members of the Public Company Accounting Oversight Board "exercis[ing] policymaking and enforcement functions[.]" 8 F.4th 1123, 1133 (9th Cir. 2021). The *Decker Coal* court also recognized that because the DOL chose, rather than was forced by Congress, to employ ALJs to adjudicate benefits claims, it could not be said that Congress wrested executive power for itself, away from the President. 8 F.4th at 1134.

The Commissioner argues that *Decker Coal* is analogous here, both because SSA ALJs and AAJs perform adjudicative functions and because there is no statutory requirement that SSA employ ALJs or AAJs to adjudicate benefits claims. (Dkt. # 19 at 6.) The Court agrees. Plaintiff attempts (dkt. # 20 at 3-4) to distinguish *Decker Coal* on the grounds that the decisions of DOL ALJs were reviewable by people directly subject to the President's authority, whereas SSA ALJs and AAJs are insulated by the unconstitutional protection afforded to the Commissioner. *See Decker Coal*, 8 F.4th at 1135. Even if *Decker Coal* can be factually distinguished on this basis, the President's ability to remove the DOL Secretary at will was only one of multiple reasons that the Ninth Circuit cited in finding no constitutional violation. *See id*. The Court finds that because SSA ALJs and AAJs perform adjudicative functions, and because SSA voluntarily chose to

ORDER - 12

employ them to serve in that way, the tenure restrictions applicable to SSA ALJs and AAJs do not violate the separation of powers.

### 2. The Commissioner's Unconstitutional Tenure Protection Did Not Deprive the Commissioner of the Authority to Resolve Plaintiff's Claim

Plaintiff contends the remedy for the unconstitutionality of the removal provision in § 902(a)(3) is reversal and remand. Plaintiff contends the Commissioner's appointment and tenure were unconstitutional because of the removal provision, depriving the Commissioner of the ability to delegate decision-making to the ALJ and Appeals Council who considered Plaintiff's case. Plaintiff's argument fails.

First, the removal provision is severable. In *Seila Law*, the Court found the constitutionally defective removal procedure was severable from the remainder of the CFPB's governing statutes because the CFPB was capable of functioning independently even if the offending removal restriction was erased. 140 S. Ct. at 2209, 2245.[4] Similarly, if the removal clause in § 902(a)(3) is stricken, the SSA remains fully functional.

Second, the removal provision does not render the Commissioner's appointment invalid, and thus does not automatically void the SSA's actions under the Commissioner. In *Collins*, the Court found the defective removal procedure did not render the FHFA's actions void from the outset. 141 S. Ct. at 1787 ("Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.").

---

[4] Four Justices dissented from Chief Justice Roberts's lead opinion holding the CFPB removal provision was unconstitutional but agreed that "*if* the agency's removal provision is unconstitutional, it should be severed." *Id.* at 2245 (Kagan, J., concurring in the judgment with respect to severability and dissenting in part).

ORDER - 13

### 3. *Plaintiff Cannot Link Any Harm to the Commissioner's Unconstitutional Tenure Protection*

Third, Plaintiff has not made any clear allegation that the removal clause in § 902(a)(3) inflicted compensable harm. In *Collins*, the Court found it was "possible for an unconstitutional provision to inflict compensable harm," and remanded to the lower court to determine whether the removal provision "inflicted harm." 141 S. Ct. at 1788-89. In that case, the action challenged by plaintiffs was the directors' adoption and implementation of an amendment (the "Third Amendment") to certain financial agreements that "materially changed the nature of the agreements" and resulted in the companies in which plaintiffs were shareholders transferring to the U.S. Treasury "at least $124 billion dollars more than the companies would have had to pay" under the prior form of the agreements. *Id.* at 1774. The Third Amendment was not subject to full judicial review, *id*. at 1775-76, 1785, and the Supreme Court thus found that fact-finding by the lower courts was required in order to determine whether plaintiffs suffered harm directly as a result of the FHFA director's unconstitutional tenure protection. *See id.* at 1789.

By contrast, in this case the action challenged by Plaintiff is the ALJ's decision denying benefits. Plaintiff has alleged no direct action by former Commissioner Saul himself, and no involvement—or even awareness—by the former President in the ALJ's decision. *Cf.* 141 S. Ct. at 1802 (Kagan, J. concurring) ("[G]iven the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone. . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Plaintiff has made no clear allegation that Commissioner Saul's unconstitutional tenure protection resulted in compensable harm to her. The ALJ's decision here was based upon an uncontested factual record and the application of established law, including caselaw, which generally cannot be changed by the Commissioner.

ORDER - 14

Nor does Plaintiff's reference to an unnamed White House official's justification for Commissioner Saul's removal indicate that Plaintiff was harmed. (*See* dkt. # 20 at 5-6.) To the extent Plaintiff generally suggests that Commissioner Saul deprived her of due process (*id.*), there is no support for this claim. *Cf. Hoye v. Sullivan,* 985 F.2d 990, 992 (9th Cir. 1992) ("The mere allegation of a substantive due process violation is not sufficient to raise a 'colorable' constitutional claim to provide subject matter jurisdiction."). Although a representative of the President suggested that Commissioner Saul was removed from office in part because he had undermined, politicized, and "reduced due process protections for benefits appeals hearings," this statement does not establish the existence of a due process violation and Plaintiff has failed to identify one. *See* https://www.cnn.com/2021/07/09/politics/social-security-commissioner-fired-by-biden/index.html (last visited Feb. 15, 2022). Furthermore, even assuming Commissioner Saul attempted to undermine, politicize, or reduce the process available to a claimant, it is the courts — rather than the Commissioner, the President, or White House officials — that determine whether a claimant received the process due, and Plaintiff has not shown that she did not receive due process in this case.

Plaintiff goes on to argue that the constitutional violation constitutes a "nexus to the harm" (dkt. # 20 at 5), citing *Lucia*, but this case does not support the proposition that a violation of separation of powers in itself constitutes compensable harm. The constitutional violation at issue in *Lucia* related to the Appointments Clause, and that violation deprived the ALJ of the authority to adjudicate claims. 138 S. Ct. at 2056. For reasons addressed *supra*, the Court finds no Appointments Clause violation present here that would invalidate the benefits decisions from the outset.

Thus, while the removal clause in § 902(a)(3) violates separation of powers, it does not independently require the Court to reverse the ALJ's decision absent a showing of compensable harm. Numerous district courts have agreed with this conclusion (*see* dkt. # 19 at 7-8 n.3 (collecting cases)), and Plaintiff has not persuaded the Court otherwise.

## V.   CONCLUSION

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

Dated this 22nd day of February, 2022.

MICHELLE L. PETERSON
United States Magistrate Judge